IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Norfolk Division**

DREW SCARPA,

    **Plaintiff,**

v.                                                       **CIVIL ACTION NO. 2:12cv608**

PRECON MARINE INCORPORATED,

    **Defendant.**

## *MEMORANDUM OPINION AND ORDER*

Before the Court is Defendant's Motion to Dismiss Count I and portions of Court III of the Plaintiff's Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). At issue in this case is whether Precon Marine Incorporated, a maritime construction company, is liable for a breach of the Warranty of Seaworthiness (Count I), negligence under the Jones Act, pursuant to 46 U.S.C. § 30104 (Court II), and Breach of the Duty to Pay Maintenance and Cure (Count III). All of these counts are related to injuries a worker allegedly incurred by operating on one of the Defendant's skiffs on the Western Branch Reservoir near Lake Prince. However, at this stage of the litigation, Defendant simply argues that Plaintiff's Amended Complaint is defective and subject to dismissal on the counts of Breach of the Warranty of Seaworthiness ("Seaworthiness Count") and the Breach of the Duty to Pay Maintenance and Cure ("Maintenance and Cure Count"). Defendant has not attacked Plaintiff's Jones Act negligence claim. However, in making its arguments, Defendant appears to raise an even more relevant question to the Court: whether it has subject matter jurisdiction over the Plaintiff's case in light of the fact that the alleged accident occurred in non-navigable waters, potentially depriving the

Court of admiralty and maritime jurisdiction. Having reviewed the pleadings and held a hearing, this matter is now ripe for judicial determination.

## I. PROCEDURAL AND FACTUAL BACKGROUND

On November 11, 2012, Plaintiff filed a complaint ("First Complaint") against Precon Marine Incorporated. Defendant responded by filing a Rule 12(b)(6) Motion, alleging Plaintiff failed to state a claim upon which relief can be granted in Counts I and III. In response, Plaintiff filed his Amended Complaint and Defendant filed the instant Rule 12(b)(6) Motion to Dismiss.

Plaintiff alleges that Plaintiff was directed to get a skiff from the Defendant's facility and transport it to the Western Branch Reservoir near Lake Prince for related work. (Amended Complaint ¶ 10). In the process of preparing the skiff for transport, an employee for the Defendant responsible for placing the skiff into a trailer was unable to secure it onto the trailer in a normal fashion. (Amended Complaint ¶ 11-15). While attempting to place the skiff in the water at its destination, it began to float away before the Plaintiff could start its engine. (Amended Complaint ¶ 16-17). When Plaintiff attempted to start the skiff's engine, it failed to turn on. As a result, Plaintiff attempted to throw a rope line to shore. (Amended Complaint ¶ 20). However, while attempting to throw the line to shore, Plaintiff severely injured his arm. (Amended Complaint ¶ 21).

## II. LEGAL STANDARD

**A. Motion to Dismiss under F.R.C.P. 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action that fails to state a claim upon which relief can be granted. For purposes of a Rule 12(b)(6) motion, courts may only rely upon the complaint's allegations and those documents attached as exhibits or incorporated by reference. *See Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31

(4th Cir. 1985). Courts will favorably construe the allegations of the complainant and assume that the facts alleged in the complaint are true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, a court "need not accept the legal conclusions drawn from the facts," nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc., v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). A complaint need not contain "detailed factual allegations" in order to survive a motion to dismiss, but the complaint must incorporate "enough facts to state a belief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). This plausibility standard does not equate to a probability requirement, but it entails more than a mere possibility that a defendant has acted unlawfully. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009). Further, the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") has indicated that "[d]ismissal of a complaint for failure to state facts supporting each of the elements of a claim is, of course, proper." *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002).

**B. Motion to Dismiss under F.R.C.P. 12(h)(3)**

Federal Rule of Civil Procedure 12(h)(3) provides for the dismissal of an action at any time where the Court determines that it lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). Unless a matter involves an area over which federal courts have exclusive jurisdiction, a federal district court has subject matter jurisdiction over a case only where the matter involves a federal question arising "under the Constitution, laws or treaties of the United States," 28 U.S.C. § 1331, or if "the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different States," 28 U.S.C. § 1332(a)(1). *See Pinkley, Inc. v. City of Frederick, Md.*, 191 F.3d 394, 399 (4th Cir. 1999) ("Federal courts are

3

courts of limited subject matter jurisdiction, and as such there is no presumption that the court has jurisdiction."). Accordingly, "before a federal court can decide the merits of a claim, the claim must invoke the jurisdiction of the court." *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006).

## C. Admiralty and Maritime Jurisdiction

Under the Constitution of the United States, Article III, Section 2, Clause 1 and 28 U.S.C. § 1333, federal courts have original and exclusive jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." However, both the United States Supreme Court ("Supreme Court") and the Fourth Circuit have held that admiralty and maritime jurisdiction does not simply extend to every accident that occurs on any body of water but only after meeting certain constitutional and public policy requirements. Under current Supreme Court case law, in order to determine whether a tort action lies with a federal district court's admiralty and maritime jurisdiction, a two part test, fully articulated in *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995), must be applied. The *Grubart* Test represents the current evolution of the decisional process used to determine whether a court has admiralty and maritime jurisdiction over a tort claim. The "traditional" test for determining tort admiralty and maritime jurisdiction was simply based on whether the tort occurred on navigable waters. *See Exec. Jet Aviation v. City of Cleveland*, 409 U.S. 249, 253 (U.S. 1972) ("Determination of the question whether a tort is "maritime" and thus within the admiralty jurisdiction of the federal courts has traditionally depended upon the locality of the wrong. If the wrong occurred on navigable waters, the action is within admiralty jurisdiction; if the wrong occurred on land, it is not."). However, this pure location based test fell out of favor:

4

> [O]ver the years this rule compelled some odd results, for instance, decisions that admiralty courts lacked jurisdiction over a claim following a ship's collision with a pier insofar as it injured the pier, for admiralty law treated the pier as an extension of the land. This rule was changed in 1948 when Congress enacted the Extension of Admiralty Jurisdiction Act, 62 Stat. 496. 46 U.S.C. App. § 740 (current version at 46 U.S.C. § 30101. The Act provided that "[t]he admiralty and maritime jurisdiction of the United States shall extend to and include all cases of damage or injury, to person or property, caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land." *Id.* After this legislative expansion of the reach of admiralty jurisdiction to capture additional cases, the Supreme Court issued four decisions that added qualifications and clarifications to the jurisdictional test in an effort to weed out cases that did not serve the purpose underlying the existence of federal maritime jurisdiction.

*In re Asbestos Litig.*, 2012 Del. Super. LEXIS 177, *5-6 (Del. Super. Ct. Feb. 15, 2012). Today, the *Grubart* Test is the operative test for tort admiralty and maritime jurisdiction:

> [W]e now apply a two-part test for determining when a tort action falls within the federal courts' admiralty jurisdiction. First, the alleged tort must have occurred on or over "navigable waters." Second, the activity giving rise to the incident must have had a substantial relationship to traditional maritime activity, such that the incident had a potentially disruptive influence on maritime commerce.

*Vasquez v. GMD Shipyard Corp.*, 582 F.3d 293, 298 (2d Cir. 2009) (internal citations omitted) (quoting *Jerome B. Grubart v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (U.S. 1995)). As the Supreme Court elaborated:

> A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water. The connection test raises two issues. A court, first, must assess the general features of the type of incident involved to determine whether the incident has a potentially disruptive impact on maritime commerce. Second, a court must determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity. We now apply the tests to the facts of this suit.

*Grubart*, 513 U.S. at 534 (internal citations and quotations omitted). As to what constitutes "navigable waters," the Fourth Circuit provides some detailed guidance:

> A body of water that is confined within a state and does not form part of an interstate waterway is not an admiralty concern. *See The Robert W. Parsons*, 191

5

> U.S. 17, 26, 48 L. Ed. 73 , 24 S. Ct. 8 (1903)(defining navigable waters as those which "'form in their ordinary condition by themselves, or by uniting with other waters, a continued highway over which commerce is or may be carried on with other States or foreign countries, in the customary modes in which such commerce is conducted by water'" (quoting from *The Daniel Ball*, 77 U.S. (10 Wall.) 557, 563, 19 L. Ed. 999 (1870))). Admiralty also extends only to waterways that can bear commercial shipping. While it is not necessary that the waterway be in current use for such shipping, it must in its current configuration be so capable. Rules of admiralty cannot remain uniform or have any certainty "if their applicability is dependent on whether, on any given day, commercial maritime activity is being conducted on the waters." *Price*, 929 F.2d at 134.

*Alford v. Appalachian Power Co.*, 951 F.2d 30, 32 (4th Cir. 1991). Finally, the Fourth

Circuit holds that:

> It is irrelevant to the interest of admiralty in unifying rules of navigation on the waterways that at one time, when a waterway was in a different configuration, it was navigable. It is therefore not surprising that the cases hold uniformly that a historical commercial use of a body of water in a configuration predating the creation of the current configuration does not support admiralty jurisdiction. *See Three Buoys Houseboat Vacations U.S.A. Ltd. v. Morts*, 921 F.2d 775, 779 (8th Cir. 1990) (finding no admiralty jurisdiction over a dammed, lockless lake wholly within one state), cert. denied, 116 L. Ed. 2d 224, 60 U.S.L.W. 3265, 112 S. Ct. 272 (U.S. Oct. 7, 1991); *Adams v. Montana Power Co.*, 528 F.2d 437, 439 (9th Cir. 1975); *Chapman v. United States*, 575 F.2d 147, 149 (7th Cir. 1977) (en banc), cert. denied, 439 U.S. 893, 58 L. Ed. 2d 239 , 99 S. Ct. 251 (1978).

*Id.* at 33.

### D. Warranty of Seaworthiness

The Fourth Circuit expounded upon the parameters of a seaworthiness claim in *Chisholm v. UHP Projects*, Inc., 205 F.3d 731, 734 (4th Cir. 2000):

> The doctrine of seaworthiness arises by operation of law and states that a ship owner owes the seaman an absolute, non-delegable duty to provide a seaworthy vessel. See *Mitchell v. Trawler Racer*, Inc., 362 U.S. 539, 549-50, 4 L. Ed. 2d 941, 80 S. Ct. 926 (1960) (seaworthiness is defined as a vessel that has a hull and equipment that are reasonably adequate in design and maintenance, and a crew that is of sufficient character to perform its intended function in the operation of the vessel). Liability for violation of the doctrine of seaworthiness is without fault. *See id.*

## III. DISCUSSION

Defendant argues that the Plaintiff's Amended Complaint is defective and subject to dismissal on two counts: Breach of the warranty of Seaworthiness ("Seaworthiness Count") and Breach of the Duty to Pay Maintenance and Cure ("Maintenance and Cure Count"). Defendant has not attacked Plaintiff's negligence claim. As an initial matter, Defendant asserts that the Plaintiff has failed to adequately plead a claim for Maintenance (i.e. food and lodging to an injured seaman) and the Plaintiff agrees.

The Defendant argues that Count I fails to state a claim because the skiff is not a "vessel in navigation." The Defendant supports this claim by asserting that absent the alleged accident taking place in navigable waters, general maritime law is not applicable. Whether by accident or design, this argument raises the issue of whether this Court has subject matter jurisdiction. As a result, the Court must determine whether it has subject matter jurisdiction over this matter before it can proceed by applying the *Grubart* Test. Part one of the test requires the Court to determine whether the alleged tort occurred on or over navigable waters of the United States. Based on the undisputed facts presented to the Court, the alleged tort did not occur on navigable waters of the United States. Both parties concede that that alleged accident occurred on Western Branch Reservoir near Lake Prince and that said Reservoir is landlocked and not connected to any other body of water, nor does it pass through another state or foreign country. As the Fourth Circuit holds, "[a] body of water that is confined within a state and does not form part of an interstate waterway is not an admiralty concern." Furthermore, the parties have presented no evidence to suggest that the Western Branch Reservoir can support commercial shipping. Given that the alleged tort did not occur on navigable waters, as *Grubart* requires, the Court does not need to reach Part two of the *Grubart* Test, i.e. whether the activity that gave rise to the alleged tort in

7

this case had a substantial relationship to traditional maritime activity. Because the Court does not have proper tort admiralty and maritime jurisdiction over this case, pursuant to Federal Rule of Civil Procedure 12(h)(3), this matter is **DISMISSED WITH PREJUDICE** for lack of subject matter jurisdiction over the Plaintiff's claims.

## IV. CONCLUSION

For reasons stated above, the Court lacks proper subject matter jurisdiction to proceed with this matter. As a result, this case is **DISMISSED WITH PREJUDICE.** The Clerk is **DIRECTED** to provide a copy of this Memorandum Opinion and Order to counsel for the parties.

**IT IS SO ORDERED.**

/s/
Raymond A. Jackson
United States District Judge

Norfolk, Virginia
June /4, 2013